MARLA TAUSCHER, SBN 259630
15303 Ventura Blvd., Ste. 900
Sherman Oaks, CA 91403
Tel: (626) 345-5777
Fax: (760) 444-2742

Laura J. Portillo SBN 186813
Brinkman Portillo Ronk, APC
4333 Park Terrace Drive Suite 205
Westlake Village, CA 91361
Telephone (818)597-2992
Fax (818)597-2998

Attorneys for Plaintiffs
Corey Carnegie and Christianna Delight Hartwell

# UNITED STATES DISTRICT COURT
## Central District of California

| | |
|---|---|
| COREY CARNEGIE; CHRISTIANNA DELIGHT HARTWELL,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY OF LOS ANGELES DEPARTMENT OF ANIMAL SERVICES; BRENDA F. BARNETTE, General Manager; TAMRALYN SHEPPIRD; Animal Control Officer; LORNA L. ESPARZA, Animal Control Officer; ANNETTE RAMIREZ, Animal Control Officer; KAREN KNIPSCHEER-COX, Animal Control Officer; KYLE SCHWAB, an individual; and BARBARA NIKOLE McCURRY, an individual,<br><br>       Defendants | Case No.: 2:14-CV-7053<br><br>COMPLAINT FOR:<br><br>1. Declaratory Relief;<br>2. Damages for Violation of 42 U.S.C. §1983;<br>3. Conversion;<br>4. Accounting; and<br>5. Injunctive Relief;<br><br>**DEMAND FOR JURY TRIAL** |

Christianna Delight Hartwell (hereinafter "Plaintiff" or "Hartwell") and Corey Carnegie (hereinafter "Plaintiff" or "Carnegie"), an individual, bring this action for: 1) Declaratory Relief; 2) Violation of 42 U.S.C Section 1983; 3) Accounting; and 4) Injunctive Relief and submit as follows:

1.      This is a civil action seeking return of property, three (3) dogs ("Pet Dogs") and three (3) cats ("Pet Cats"), as well as documents and other personal property, to Plaintiff Carnegie, and return of property, three (3) dogs ("Pet Dogs"), as well as documents and other personal property, to Plaintiff Hartwell and third parties, as well as damages against all defendants for committing acts under color of law, and depriving Plaintiffs Carnegie and Hartwell of rights secured by the Constitution of the United States and laws of the United States.

## JURISDICTION AND VENUE

2.      Defendants Brenda Barnette ("Barnette"), Tamralyn Sheppird ("Sheppird"), Lorna Esparza ("Esparza"), Annette Ramirez ("Ramirez"), and Karen Knipscheer-Cox ("Cox"), while acting in their official capacities as officers of the City of Los Angeles Department of Animal Services ("LAAS"), and Defendants Kyle Schwab ("Schwab") and Barbara Nikole McCurry ("McCurry"), acting as agents of Defendant LAAS, deprived Plaintiffs of their property without due process of law and made unreasonable searches and seizures of the properties of Plaintiffs and third parties, thereby depriving Plaintiffs of their rights, privileges and immunities as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

3.      The Court has jurisdiction of this action pursuant to 42 U.S.C. §1983 and 28 U.S.C §1343.

4.      The jurisdiction of this Court over this subject matter is further invoked pursuant to 28 U.S.C. §1331.

5.      Plaintiffs are and were at all times mentioned herein citizens of the United States and of the State of California.

6.      Defendant Barnette was at all times material to this Complaint, the General Manager of the LAAS.

7.      Defendants Esparza, Ramirez, Cox, Sheppird, and others not presently known, were, at all times material to this Complaint, duly appointed animal control officers ("ACOs") of LAAS.

8.      Defendant Schwab claims to train aggressive dogs and publicly boasts about his vigilante animal "rescue" tactics for which he claims to have been arrested 13 times.  Plaintiffs are informed and believe Defendant Schwab operates an unpermitted commercial dog kennel on his property and has publicly expressed his desire to be featured in a television series about his activities.

9.      Defendant McCurry operates an unpermitted commercial dog training and boarding facility at her residence in the City of Los Angeles.  Defendant McCurry has an extensive, documented history of arrests and/or convictions in multiple states for crimes such as check fraud, credit card fraud, cocaine possession, driving under the influence, and domestic violence.

10.     Defendants Schwab and McCurry, and others not presently known, were, at all times material to this Complaint, individuals acting under the direction of, or in conjunction with, officers of LAAS.

11.     At all times material to this Complaint, these Defendants acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State of California, City of Los Angeles, and the LAAS.

12.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant hereto, each of the Defendants was the agent, servant, representative, joint venturer or employee of each of the remaining Defendants and in doing the things hereinafter alleged, each Defendant was acting within the course and scope of said agency, servitude, representation, joint venture, or employment, with the advance knowledge, permission, consent, acquiescence, authorization, direction or subsequent ratification of each and every remaining Defendant.

13.    Plaintiffs are ignorant of the true names and capacities of one or more defendants. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained by Plaintiffs.

14.    The claim arose in the Central District of California.

## FACTUAL BACKGROUND

15.    Plaintiff Hartwell is the owner of her Pet Dogs and was in possession of dogs belonging to her mother and others and, at all times relevant, Plaintiff Hartwell was living in the City of Los Angeles with her pets.

16.    Plaintiff Carnegie is the owner of her Pet Dogs and Pet Cats and, at all times relevant, Plaintiff Carnegie was living in the City of Los Angeles, California with her pets.

17.    Defendant LAAS is the government agency responsible for enforcing laws related to animals where Plaintiffs' properties are located within City of Los Angeles.

### LAAS's Unlawful Taking of Animals from the Property of Plaintiff Hartwell

18.    On or about Saturday, June 28, 2014, Defendant Sheppird went to the property of Plaintiff Hartwell, accompanied by officers from the Los Angeles Police Department ("LAPD"). Plaintiff Hartwell is the founder of an animal rescue group called Los Angelitos de Dios ("LADD") which holds local adoption events and transports animals from Southern California animal shelters to other states and Canada for adoption. Defendant Sheppird wrote in her official report (*"Investigation Log"*) that she was responding to a complaint from an individual that claimed to have observed more than 100 dogs on the property of Plaintiff Hartwell.

19.    When Defendant Sheppird arrived at the property of Plaintiff Hartwell, Schwab and McCurry were already at the property. Defendants Schwab and McCurry had gained entry upon Plaintiff's property by deception, introducing themselves as animal rescuers, and telling Plaintiff Hartwell that they were there to help her find homes for the rescue dogs on her property.

20.    Plaintiff Hartwell is informed and believes, and thereon alleges, that it was Defendant(s) Schwab and/or McCurry who called Defendant Sheppird from Plaintiff's

property after taking several photographs of Plaintiff Hartwell's property without Plaintiff's consent.

21.    Plaintiff Hartwell was unaware that Defendant Sheppird and LAPD officers had arrived at her property, because she was not near the entrance to the property.  Plaintiff Hartwell is informed and believes, and thereon alleges, that either Defendant Schwab or McCurry opened the gate and allowed Defendant Sheppird and LAPD officers to enter Plaintiff's property.

22.    When the gate was opened, a dog named "Kai", escaped the property causing the LAPD officers and Defendants Sheppird and Schwab to chase the dog in the street.  Upon return to Plaintiff's property, with the captured dog, Plaintiff Hartwell allowed Defendants to enter her property.

23.    Plaintiff Hartwell was in the process of feeding animals, cleaning, and preparing animals for adoption later that day, but escorted Defendant Sheppird around her property to see the rescue dogs that were on the property in anticipation of adoptions and transports.

24.    When Defendant Sheppird questioned Plaintiff Hartwell about the medical conditions of some animals, Plaintiff immediately telephoned her veterinarian who spoke directly with Defendant Sheppird and confirmed that Plaintiff had already made an appointment to bring those animals to the veterinarian's clinic for treatment the following Monday, on June 30, 2014.

25.    Defendant Sheppird took photographs of Plaintiff's property, but, because Plaintiff Hartwell had not finished cleaning, she told Defendant Sheppird to stop taking photographs.  Defendant Sheppird stopped taking photographs with her camera and began surreptitiously taking photographs with her cell phone in defiance of Plaintiff's instruction to stop photographing her property.

26.    Defendant Sheppird scrutinized Plaintiff Hartwell's property for more than two (2) hours, during which time she did not observe any animals in imminent danger or that were in need of impound by LAAS.

27.    Defendant Sheppird issued a *Notice to Comply* to Plaintiff Hartwell, instructing her to reduce the number of dogs on her property to three (3) and to provide proof of veterinary care for three (3) dogs, by July 2, 2014.

28.    Plaintiff Hartwell offered to provide veterinary records, at that time, to Defendant Sheppird to prove that the dogs had been receiving medical care, but as Defendant Sheppird states in her *Investigation Log*, she told Plaintiff Hartwell that she would "hold off on medical records" due to time constraints, noting that she had already been on Plaintiff's property for at least two hours.

29.    Nonetheless, Defendant Sheppird told Plaintiff Hartwell that she would have to take some dogs, without explaining why.

30.    Defendant Schwab repeatedly told Plaintiff that if she did not give Defendant Sheppird any dogs, that LAAS would return with a warrant and seize all of the dogs on Plaintiff's property.   Defendant Sheppird did not dispute Defendant Schwab's statement of LAAS's policy in her presence.

31.    Fearing the seizure of all of the dogs from her property, Plaintiff Hartwell reluctantly agreed to allow Defendant Sheppird to take ten (10) dogs, which were subsequently impounded at LAAS's East Valley facility.

32.    Defendants Schwab and McCurry transported an additional twelve (12) dogs, in their personal vehicles, to LAAS's East Valley facility from Plaintiff Hartwell's property.

33.    Defendants Schwab and McCurry later posted photographs of Plaintiff Hartwell's property on social media websites, including Facebook, with disparaging remarks about Plaintiff.

34.    On or about June 29, 2014, in the morning, Defendant McCurry returned to the property of Plaintiff Hartwell and again employed deception to gain access to the property and to Plaintiff's dogs.  Defendant McCurry told Plaintiff that she had received grant money to provide veterinary care for animals and that she would take a number of Plaintiff's dogs for treatment.

35.    Defendant McCurry took 8 or 9 dogs from Plaintiff's property, but rather than take them to a veterinarian, Defendant took them to LAAS's East Valley facility.

36.    Defendant Sheppird stated that Defendant McCurry brought the dogs to East Valley to assist Defendant LAAS with its investigation of alleged animal neglect by Plaintiff Hartwell.

37.    Plaintiff Hartwell is informed and believes, and thereon alleges, that Defendant McCurry was acting at the direction of LAAS to obtain possession of dogs from Plaintiff's property by false pretenses, for the purpose of providing LAAS with information that Defendant Sheppird guessed that LAAS officers could use as a pretext for obtaining a search warrant to seize animals from Plaintiff's property.

38.    In order to comply with LAAS's requirement that she reduce the number of dogs on her property to three (3) by July 2, 2014, Plaintiff Hartwell contacted a number of rescue organizations who came to her property on or about June 30, 2014 to take dogs for adoption to third parties.

**Defendants Sheppird and Schwab Return to Plaintiff's Property to Seize Dogs**

39.    On or about July 1, 2014, Defendant Sheppird returned to the property of Plaintiff Hartwell with several additional LAAS ACOs, including Defendant Ramirez, and LAPD officers to serve a search warrant. Defendant Schwab was also present on Plaintiff's property with LAAS ACOs.

40.    In the Statement of Probable Cause for the Search Warrant, Defendant Sheppird states under penalty of perjury that a preliminary report from a veterinarian employed by Defendant LAAS noted health issues for some of the dogs that had already been taken and impounded by LAAS.

41.    In her Statement of Probable Cause, Defendant Sheppird omitted the fact that Plaintiff Hartwell had offered to show Defendant Sheppird records of veterinary treatment for dogs at her property on June 28, 2014, but that Defendant Sheppird declined to look at those records. Defendant Sheppird further failed to state that she had spoken directly with Plaintiff

Hartwell's veterinarian and verified that Plaintiff had arranged for veterinary treatment of animals the following Monday.

42.    Defendant Sheppird intentionally omitted crucial information for the purpose of obtaining a Search Warrant alleging animal neglect.

43.    Upon searching Plaintiff Hartwell's property, Defendants discovered that all of the dogs had been removed from the property, in accordance with the requirement in the *Notice to Comply* issued on June 28, 2014 that Plaintiff reduce the number of dogs on her property to three (3).

44.    Defendants Sheppird and LAAS seized boxes of documents that they alleged were related to animals. The language of the Search Warrant specifically limits  scope of the search warrant issued to search Plaintiff Hartwell's property to "…any and all papers, documents, dog licenses/ID tags, and photographs tending to show ownership, care, custody or control of any and all animals located, confined to and upon the property."

45.    Defendants were only permitted to seize documents related to animals on the property, but there were no animals on Plaintiff Hartwell's property when the Search Warrant was served on July 1, 2014. Therefore any documents seized by Defendants on that day from Hartwell's property were seized unlawfully, outside the scope of the search warrant.

46.    Defendant Ramirez issued a *Post-Seizure Hearing Notice* to Plaintiff Hartwell for thirty four (34) dogs that were in the custody of Defendant LAAS; twenty two (22) dogs that had been taken from her property by Defendants Sheppird, Schwab, and McCurry on June 28, 2014, and possibly for the additional dogs that had been taken from Plaintiff's property by Defendant McCurry on June 29, 2014.

### Defendants Unlawfully Seized Animals from a Private Veterinary Clinic

47.    Plaintiff Hartwell is informed and believes, and thereon alleges, that, upon discovering that the trailer was no longer on Plaintiff's property, Defendant Schwab drove to Valley Animal Hospital in Van Nuys and contacted Defendant Sheppird to tell her that the trailer was parked behind the animal hospital.

48.    A number of dogs had been brought from Plaintiff Hartwell's property to the animal hospital for veterinary exams and health certificates prior to transport to other regions. Plaintiff Hartwell and others had unloaded several of the dogs from the trailer into the animal hospital when LAPD officers and LAAS officers, led by Defendant Sheppird, arrived and demanded that the unloading of dogs immediately cease.

49.    Defendants Sheppird and Ramirez, with additional LAAS personnel, seized 44 dogs from inside the animal hospital and 16 dogs that remained in the trailer.  Defendant Sheppird issued a *Post-Seizure Hearing Notice* to Plaintiff Hartwell for the 60 dogs seized from the veterinarian's premises.

50.    The justification for the alleged "investigation" by Defendant Sheppird on behalf of Defendant LAAS, and taking of animals from Plaintiff's property and that of the veterinary hospital was California Penal Code §597.1, as evidenced by the *Post-Seizure Hearing Notices* issued to Plaintiff Hartwell.  PC §597.1 penalizes animal owners for failure to provide proper care and attention for animals.

51.    LAAS officers did not have a search warrant or consent to enter the property of the animal hospital and/or to seize animals from the premises.

**Defendants Unlawfully Seized Animals from Plaintiff Carnegie**

52.    On or about July 8, 2014, at approximately 8:00 a.m., Defendants Esparza and Shepphird appeared at Plaintiff Carnegie's property on Louise Avenue, Lake Balboa, California ("Louise Property").

53.    Defendants Esparza and Sheppird went to Plaintiff's neighbor's property to look through small gaps in the fence at Plaintiff's property and saw Plaintiff Carnegie caring for several dogs. Plaintiff Carnegie is the founder of Ayechimomma Rescue.

54.    At the request of Defendant Esparza, Plaintiff Carnegie brought out several dogs to show to Defendants Esparza and Sheppird, who took photographs of the dogs.

55.    Defendant Esparza left Plaintiff Carnegie's property and returned several hours later with a search warrant.

56.    Defendant Esparza prepared and obtained the search warrant to search the Louise Property "FOR THE FOLLOWING PROPERTY: Any and all animals found on the property described above to be in violation of California Penal Code Sections 597(b) and/or 597.1, and/or Los Angeles Municipal Code Section(s) 53.50 and/or 53.70 and any and all papers, documents, dog licenses/ID tags, and photographs tending to show ownership, care, custody or control of any and all animals located, confined to and upon the property." (Search Warrant and Affidavit page SW &A2)

57.    In the Statement of Probable Cause for the Search Warrant, Defendant Esparza states under penalty of perjury that "On July 3, 2014, Officer Shepphird received an email from Witness Osborn that stated that approximately 17 of the dogs [from the property of Christianna Billman Coppola] went to an address of 6601 Louise Avenue, Lake Balboa, California 91406 to a Corey Carnegie." (Statement of Probable Cause Page SW & A4).

58.    In the Search Warrant and Affidavit, Defendant Esparza indicated that there was probable cause to believe that Plaintiff Carnegie was in possession of property *with the intent* to use it as a means of committing a public offense or that she was concealing property for another person.

59.    Defendants failed to cite any evidence that Plaintiff Carnegie was in possession of property which she intended to use in the commission of a public offense or that Defendants reasonably believed Plaintiff was concealing for another.

60.    None of the animals on Plaintiff Carnegie's property belonged to Plaintiff Hartwell or LADD.

61.    Despite allegedly receiving an e-mail from Witness Osborn on July 3, 2014, which Defendants claim indicated that Plaintiff Carnegie was in possession of property used by another person to commit a public offense, Defendants waited five (5) days to take any action and did not get a search warrant until July 8, 2014.

62.    Defendants did not offer any explanation for a five (5) day delay in searching Plaintiff Carnegie's property that they claim was used in the commission of a public offense and being concealed by Plaintiff Carnegie.

63.     Defendant Esparza failed to produce the alleged July 3, 2014 Tammy Osborn email ("Osborn Email") as an exhibit to her affidavit in support of the Search Warrant.  Neither Defendant Esparza nor Defendant LAAS has produced the Osborn Email to Plaintiff Carnegie or her counsel at any time.

64.     Defendant Esparza also failed to produce any photographs of the dogs in Plaintiff Carnegie's possession as exhibits to her affidavit in support of the Search Warrant.  Neither Defendant Esparza nor Defendant LAAS has produced the photographs to Plaintiff Carnegie or her counsel at any time.

65.     Defendants, and all of them, allegedly received the Osborn Email on July, 3 2014, but Defendants waited five (5) days to seek a warrant to search Plaintiff Carnegie's property.

66.     Where there was no evidence of exigent circumstances that would necessitate immediate seizure of animals from Plaintiff Carnegie's property, Defendants are required to convene a pre-seizure hearing in accordance with PC §597.1(g).

**Defendants Failed to Provide for a Pre-Seizure Hearings Pursuant to PC §597.1(g) or to Cite Circumstances that Necessitated Immediate Seizures of Animals from Plaintiffs**

67.     Defendants cite California Penal Code §597.1 to justify their seizure of Plaintiff Hartwell's and Plaintiff Carnegie's animals.  PC §597.1 provides, in part, that where an animal control officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of an animal or others, the officer shall immediately seize the animal and comply with subdivision (f) of PC S597.1.  In all other cases, officers shall comply with the provisions of subdivision (g), which provides for a hearing *prior to the seizure of animals*.

68.     In an official report detailing her lengthy inspection of Plaintiff Hartwell's property on or about June 28, 2014, Defendant Sheppird wrote, "I did not see any dogs in imminent danger".

69.     A pre-seizure hearing should have been noticed and convened to determine whether circumstances existed that would have justified a search of Plaintiff Hartwell's property and/or seizure of any animals.

70.     With respect to the seizure of animals from Plaintiff Carnegie, in the affidavit for the search warrant, Defendant Esparza opined that some of the dogs that Plaintiff Carnegie showed to Defendants had skin conditions, fleas, and were not clean.  Defendant Esparza failed to cite any grounds for immediate seizure of animals from Plaintiff's property.  Defendant Esparza did not provide any evidence that very prompt action was necessary, such that the animals should be immediately seized pursuant to PC §597.1(f).

71.     Defendants claim to have photographed 26 animals at Plaintiff's residence, but did not include any of those photographs in support of the affidavit for the Search Warrant, nor have Defendants since produced those photographs for Plaintiff.

72.     PC §597.1(g) specifically provides for a pre-seizure hearing within 48 hours after notice to the owner or custodian of an animal.

73.     Defendants have failed to state any justification for failing to hold a hearing *prior to the seizure of animals* from either Plaintiff Hartwell's or Plaintiff Carnegie's properties.

**Defendants Sheppird and LAAS Seized Property from Plaintiff Hartwell Outside the Scope of the Search Warrant and Continue to Refuse to Return the Property to Plaintiff**

74.     On July 1, 2014, Defendant Sheppird and additional LAAS personnel served a Search Warrant at the property of Plaintiff Hartwell at 9187 Arleta Avenue, Arleta, California.

75.     Defendants seized several containers of documents, many of which are Plaintiff's personal papers, unrelated to animals, from Plaintiff Hartwell's property.

76.     The search warrant issued for 9187 Arleta Avenue limited the seizure of documents to "...and any and all papers, documents, dog licenses/ID tags, and photographs tending to show ownership, care, custody or control of any and all animals located, confined to and upon the described property."

77.     When Defendants arrived at Plaintiff Hartwell's property to serve the search warrant, there were no animals on the premises, but they seized the documents nonetheless and have refused to return the documents to Plaintiff Hartwell.

**Defendants Sheppird and Esparza Seized Property from Plaintiff Carnegie Outside the Scope of the Search Warrant and Continue to Refuse to Return the Property to Plaintiff**

78.     On July 8, 2014 Defendants Sheppird and Esparza served a Search Warrant on Plaintiff Carnegie, and seized 32 dogs, 5 cats, and 2 potbelly pigs from the Louise Property. Three of the dogs and three of the cats seized belonged to Plaintiff Carnegie as her personal pets and the remaining animals were in the possession of Plaintiff on behalf of Ayechimomma Rescue.

79.     On behalf of Defendant LAAS and Barnette, Defendants Esparza and Sheppird seized items completely unrelated to the Search Warrant, including cash, third party confidential human medical records, and veterinary and microchip records for dogs that were not on the Louise Property on the July 8, 2014 seizure date.

80.     The search warrant limited the seizure of documents to "…and any and all papers, documents, dog licenses/ID tags, and photographs tending to show ownership, care, custody or control of any and all animals located, confined to and upon the described property."

81.     Despite repeated requests from Plaintiff Carnegie and her counsel for return of the property seized outside the scope of the warrant, Defendants Barnette, LAAS, and Esparza refuse to return to Carnegie personal property items unrelated to the Search Warrant. Plaintiff Carnegie has made numerous requests to Defendants Barnette, LAAS, and Esparza to return her personal property but all Defendants have continued to deprive Plaintiff Carnegie of her personal property.

82.     On July 17, 2014, Defendant Esparza admitted that she had read confidential human medical records seized from the Louise property despite the fact that those records were obviously unrelated to the Search Warrant.

**Defendant Cox Determined that the Seizure of Dogs from Plaintiff Hartwell's Property by Defendants was Not Valid or Justified**

83.    In accordance with Penal Code ("PC") Section 597.1 and the instructions contained in the *Post-Seizure Hearing Notices* issued by Defendants, Plaintiff Hartwell requested a post-seizure administrative hearing ("Admin Hearing").

84.    On July 16, 2014, a post-seizure hearing was convened by Defendant LAAS and presided over by Defendant Cox, ACO for LAAS, acting in the capacity of a Hearing Officer for Defendant LAAS.

85.    Oral testimony and documentary evidence were presented by Defendant Sheppird on behalf of Defendant LAAS.  Plaintiff Hartwell also presented oral testimony at the Admin Hearing.

86.    Based on the evidence presented at the Admin Hearing, Defendant Cox issued three written decisions on July 17, 2014, in which she concluded that the seizures of animals from the property of Plaintiff Hartwell and the property of Valley Animal Hospital were not valid and were not justified.

87.    Defendant Cox further concluded that the ten (10) dogs taken from Plaintiff Hartwell's property on June 28, 2014 by Defendant Sheppird were not seized; rather they were willingly surrendered by Plaintiff Hartwell.

88.    In her written decisions, Defendant Cox mentioned that twelve (12) dogs had been taken on June 28, 2014 from Plaintiff Hartwell's property by Defendants Schwab and McCurry, but Defendant Cox failed to address the issue of the seizure of those dogs by Defendants Schwab and McCurry on behalf of Defendant LAAS, which has held the dogs at its facility since that date.

89.    Defendant Cox concluded that the sixty (60) dogs taken from Valley Animal Hospital on July 1, 2014 by Defendants Sheppird, Ramirez, and LAAS were not seized, rather they were willingly surrendered by Dr. Chung, the veterinarian on duty at the animal hospital on July 1, 2014.

90.    Despite the decision of Defendant Cox on behalf of Defendant LAAS that the seizure of animals from Plaintiff Hartwell's property and the property of Valley Animal Hospital were invalid and unjustified, Defendant LAAS, through its attorney, Dov Lesel, has

presented Plaintiff Hartwell with a "Settlement Agreement" that seeks to impose conditions on the return of Plaintiff Hartwell's animals to her and the disposition of other animals taken by Defendant LAAS and which are still in the custody of LAAS.

91.    Defendant LAAS has no legal authority to impose conditions on the return of property on a finding that the seizure of that property is invalid and unjustified.

92.    Nonetheless, Defendant LAAS seeks to prohibit Plaintiff Hartwell from possessing any of her personal pet dogs until the resolution of any criminal case against her arising from these seizures of animals, or until June 30, 2015 if no criminal charges are brought by Defendant LAAS against Plaintiff Hartwell.

93.    Defendant LAAS seeks to dictate the terms under which ownership of Plaintiff Hartwell's personal pet dogs will be transferred to third parties pending the resolution of criminal charges or until June 30, 2015.

94.    LAAS further seeks to collect adoption fees from Plaintiff Hartwell's mother to regain possession of her mother's own dogs that have been held unlawfully by Defendant LAAS since July 1, 2014.

95.    The terms of the Settlement Agreement directly contradict the decision of Defendant Cox, and statements by other Defendants in written reports, that the dogs were "willingly surrendered" to Defendant LAAS.

96.    Defendant LAAS is employing extortionate tactics to attempt to coerce Plaintiff Hartwell to accept conditions for release of her own animals where there is no legal basis for continued detention of her animals and other property by Defendant LAAS.

97.    Plaintiff Hartwell is entitled to the immediate, unconditional return of her pets and other property by LAAS as well as the right to determine the disposition of the animals that remain in LAAS's custody that were taken from Plaintiff Harwell's property and the property of Valley Animal Hospital.

**Defendants Violated Plaintiff Carnegie's Right to Due Process in the Unlawful Conduct of the Post-Seizure Hearing**

98.     Pursuant to PC §597.1, Plaintiff Carnegie requested a post-seizure administrative hearing ("Admin Hearing").

99.     On July 17, 2014, the Admin Hearing was convened by Defendant LAAS and presided over by over by Defendant Cox, ACO for LAAS, acting in the capacity of a Hearing Officer for Defendant LAAS.   Hearings under PC §597.1 are public proceedings, yet Defendants Cox and LAAS did not record the proceedings and Defendant Cox refused to permit Carnegie to make an audio recording of the Admin Hearing.

100.    Defendant Cox denied Plaintiff Carnegie her due process rights by preventing Plaintiff from preserving a record of the Admin Hearing from which Plaintiff Carnegie could base an appeal in the event that LAAS issued a ruling adverse to Plaintiff's interests.

101.    Defendant Cox's refusal to allow Plaintiff to record the Admin Hearing was arbitrary and capricious and had no basis in law.  In fact, the reason given by Defendant Cox for her refusal to allow recording was, "because I'm uncomfortable being recorded......I can refuse to be recorded, by law.....I don't like being recorded.  If you want to do that, we won't have the hearing today.  I just don't like it.  Personal feelings."

102.    At the Admin Hearing, Defendant Cox stated that Carnegie's counsel should have learned "from the last hearing" that Cox did not permit recording of administrative hearings.

103.    Defendants Cox and Esparza further deprived Plaintiff of her due process rights by engaging in ex parte communication prior to the hearing.  At least one day before the Admin Hearing, Defendant Esparza provided Defendant Cox with nearly 80 pages of documentation related to the matter without providing any documentation or notice of same to Plaintiff or her counsel.

104.    Defendant Esparza handed a stack of documents to Plaintiff's counsel minutes before the commencement of the Admin Hearing, commenting that she had given those documents to Defendant Cox the previous day.

105.    Plaintiff is informed, and thereon believes, that Defendants Cox and Esparza are both members of the LAAS' Animal Cruelty Task Force and/or the Small Animal Rescue

Team, which investigate animal related crimes for the City of Los Angeles. Where a hearing officer is acting in an investigatory and judicial capacity, bias is presumed, which should result in disqualification of the officer.

106. The purpose of the post-seizure administrative hearing pursuant to PC §597.1(f) is to determine the validity of a seizure. If a seizure is deemed valid, the costs of animal care shifts to the owner of the animals and becomes a lien upon the animals if the owner seeks their return.

107. Pursuant to PC §597.1(h), where an animal is properly seized, the animal may be considered abandoned if the owner does not pay the charges within 14 days of the seizure or within 14 days of a notice to the owner that the animal is available for return to the owner.

108. Defendants rendered any payment impossible within the statutory time limits because Defendants failed to provide notice of charges within 14 days and to date have not provided notice that any animals are available for return to Plaintiff.

109. On July 22, 2014, in accordance with PC §597.1(i), Plaintiff provided Defendants LAAS and Barnette with written assurance of her ability to provide the necessary care for the Pet Dogs and Pet Cats that she is lawfully entitled to possess. To date, Defendants have not acknowledged receipt of Plaintiff's assurance nor have they responded to that assurance in any manner.

110. The Admin Hearing is intended to determine the validity of a seizure, not to examine evidence obtained from a seizure, a fact which Defendant Cox stated at the outset of the Admin Hearing on July 17, 2014.

111. However, during the Admin Hearing, Defendant Cox and Defendant Esparza reviewed approximately 60 photographs taken on Plaintiff's property and discussed them at length. When asked by Plaintiff's counsel why the evidence was being reviewed during the Admin Hearing, Defendant Cox stated, "Because I want to."

112. A decision upholding the validity of the seizure of animals forms the basis for subsequent criminal prosecution, which carries penalties of up to 6 months in jail, criminal fines and restitution.

113.     On July 22, 2014, Defendant Cox issued a decision ("Decision") upholding the validity of the seizure of animals from Plaintiff's property.  As grounds for her decision, Defendant Cox specifically references a complaint "from a reliable source", the photographs that she reviewed with Defendant Esparza during the Admin Hearing, and Defendant Esparza's opinion about the condition of the dogs.

114.     The issue of whether or not grounds existed for immediate seizure of the animals from Plaintiff's property was not raised either in the Admin Hearing or in the Decision issued by Defendant Cox.

**Defendants Intentionally Misinterpreted and Misused California Penal Code §597.1 to Justify Their Conduct**

PC §597.1(a)(1) allows for seizure of "stray or abandoned animals" and does not apply to any of the animals taken from the property of Plaintiff Hartwell on June 28 and June 29, 2014, from the veterinary clinic on July 1, 2014 or from  the Louise Property on July 8, 2014. The animals at those locations were neither stray nor abandoned.  In fact, Defendants were fully aware of the Plaintiffs' identities as evidenced by their own *Investigation Logs*.  PC §597.1(a)(1) also provides that animals seized will be cared for and treated by animal control until the animals are deemed to be in suitable condition to be returned to their owner.

115.     To date, Plaintiff Hartwell has not been given any information by Defendants regarding the condition or disposition of the animals that were unlawfully taken from her property on June 28 and June 29, 2014 or that were seized by Defendants from Valley Animal Hospital on July 1, 2014.

116.     To date, Plaintiff Carnegie has not been given any information by Defendants about any of the animals seized from her property on July 8, 2014.

117.     Plaintiff Carnegie has relinquished her rights to all but three cats and three dogs, identified by impound numbers A1491530, A1491528, A1491521, A1491534, A1491531 and A1308840.  Those six animals are Plaintiff Carnegie's pets and personal property and she has repeatedly asked for their return.

118.    Defendants have cited no authority for their refusal to return Plaintiff Carnegie's Pet Dogs and Pet Cats to her.

119.    Despite repeated requests from Plaintiff, LAAS, Barnette, and Esparza refuse to provide a detailed accounting of actual costs for fourteen days of board and care for Carnegie's personal Pet Dogs and Pet Cats.

120.    On July 23, 2014 LAAS, Barnette and Esparza served Plaintiff Carnegie with an invalid *Notice of LEIN* [sic] demanding $13,130.13 without any details about the charges or documentation to substantiate the amount demanded.

121.    Plaintiff's Pet Dogs and Pet Cats remain at the LAAS West Valley facility with no information concerning their future disposition.

122.    Defendants City of Los Angeles, LAAS, Barnette, Cox, Sheppird, and Esparza, acting under color of law, have deprived, and continue to deprive Plaintiffs Carnegie and Hartwell of their civil rights and their property.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief Pursuant to 28 U.S.C. § 2201 Against All Defendants)**

123.    Plaintiff repeats, realleges and incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

124.    Plaintiff is informed and believes, and based thereon, alleges that a controversy exists relating to the application of PC §597.1 which was enacted regarding the seizure of stray or abandoned animals.  The animals seized from the Louise Property were neither stray nor abandoned.  These animals were either Plaintiff Carnegie's Pet Dogs, Pet Cats, or in the custody and care of Plaintiff Carnegie as rescue animals. Plaintiff Carnegie desires a judicial determination of the Defendants' application of PC §597.1 to deprive Plaintiff Carnegie of her Pet Dogs and Pet Cats and an attempt by Defendant LAAS to charge Plaintiff Carnegie exorbitant fees not authorized by the law.

125.    PC 597.1 provides, in pertinent part, as follows:
            (a) (1) Every owner, driver, or keeper of any animal who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care and attention is guilty of a misdemeanor.  Any peace

> officer, humane society officer, or animal control officer shall take possession of the *stray or abandoned animal* and shall provide care and treatment for the animal *until the animal is deemed to be in suitable condition to be returned to the owner.* [emphasis added].

126.   It is the position of Plaintiffs Hartwell and Carnegie that PC §597.1 was not intended to be used to seize animals in the presence of the animals' owners or custodians or to permanently deprive the owners or custodians of possession of the animals.

127.   A judicial declaration is necessary and appropriate under the circumstances so that Plaintiffs Hartwell and Carnegie may ascertain their rights as they relate to their pets and other personal property that was unlawfully seized and that that remains in the possession of Defendant LAAS.  Furthermore, a judicial declaration is necessary to prevent Defendants from euthanizing, transferring, or otherwise disposing of Plaintiffs pets and other property.

## SECOND CLAIM FOR RELIEF

### (Violation of 42 U.S.C. Section 1983 Against All Defendants)

128.   Plaintiffs allege and reallege by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

129.   Defendants are engaging in a practice of extracting money and/or property (animals) from pet owners in the form of fees and fines by unlawfully seizing animals without legal justification, impounding the animals indefinitely and demanding money for their return.

130.   Defendants further coerce pet owners to relinquish animals to LAAS by threatening owners with criminal prosecution, possible incarceration, and exorbitant impound fees.  Upon relinquishment, the animals may be killed by LAAS.

131.   Furthermore, where animals are seized by Defendants pursuant to criminal statutes, animal owners face deprivation of their right to liberty where the penalties include jail sentences.

132.   On or about June 28, 2014 and July 1, 2014, all Defendants acted in concert with one another and committed acts that constituted unreasonable searches and seizures of the buildings, grounds and vehicles in possession of Plaintiff Hartwell in violation of Plaintiff's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

133.    On or about July 8, 2014, all Defendants acted in concert with one another and committed acts that constituted unreasonable searches and seizures of the buildings, grounds and vehicles on the property of Plaintiff Carnegie in violation of Plaintiff's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

134.    All Defendants continue to act in concert with one another to commit acts to deprive Plaintiffs of their property, including pet dogs and cats and other personal property, which are being detained at Defendant LAAS's facilities.

135.    During the commission of the above acts, all Defendants were and are acting under color of California law.

136.    Defendants have failed to cite any valid justification for their search, seizure, and continued detention of Plaintiffs' properties in violation of Plaintiffs' right to due process under the law.

137.    As a direct and proximate result of Defendants' violations of Plaintiffs' civil rights, Plaintiffs have incurred legal and other expenses, which continue to accrue.

138.    By means of their unlawful search and seizure of Plaintiffs' properties, all Defendants, and others not presently known, intentionally, or with deliberate indifference and callous disregard for Plaintiffs' rights, deprived Plaintiffs of their right to be free from unreasonable searches and seizures, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

139.    Defendants' flagrant disregard for due process threatens Plaintiff Hartwell's and Plaintiff Carnegie's liberty insofar as PC §597.1 carries a potential penalty of six months in jail.  Plaintiffs will incur significant additional expenses for attorney's fees to provide a defense to any criminal charges as well as potential fines and penalties in the event that they are found guilty of any crimes.

140.    On June 28, 2014, Defendants Sheppird and LAAS unlawfully seized boxes of documents belonging to Plaintiff Hartwell that they alleged were related to animals. Yet, the scope of the search warrant issued to search Plaintiff Hartwell's property only includes the

seizure of paperwork related to dogs found on the property at the time the search was conducted.

141.    There were no dogs on Plaintiff Hartwell's property on June 28, 2014 when the search warrant was served, therefore any documents taken by Defendants on that day from Hartwell's property were taken outside the scope of the search warrant.

142.    As a direct result of the unlawful taking of Plaintiff Hartwell's documents by Defendants Sheppird and LAAS, outside the scope of the search warrant, Plaintiff Carnegie has was targeted in a sham "investigation" by Defendants LAAS, Ramirez, Sheppird and Esparza. As such, Plaintiff Carnegie was subject to unreasonable searches and seizures of the buildings, grounds and vehicles in possession of Plaintiff Carnegie in violation of Plaintiff's right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## THIRD CLAIM FOR RELIEF

### (Plaintiff Hartwell Claim for Conversion Against All Defendants)

143.    Plaintiff Hartwell repeats, realleges and incorporates by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

### Defendant  Schwab Unlawfully Took Five (5) or Six (6) of Plaintiff Hartwell's Dogs and Dumped Them at Defendant LAAS's East Valley Facility

144.    Plaintiff Hartwell is informed and believes that on or about June 29, 2014, Defendant Schwab went to Valley Animal Hospital in Van Nuys, and falsely told staff there that he had Hartwell's consent to take several of Plaintiff Hartwell's dogs from boarding at Valley Animal Hospital and deliver them to other dog rescue organizations.

145.    Defendant Schwab transported five (5) or six (6) of Plaintiff Hartwell's dogs in his personal vehicle to the LAAS East Valley facility for impoundment by Defendant LAAS.

146.    Plaintiff Hartwell is informed and believes that the dogs taken by Defendant Schwab to LAAS's East Valley facility, without Plaintiff Hartwell's knowledge or consent, were impounded by LAAS as "evidence".

147.   At the time Defendant Schwab removed the five (5) or six (6) dogs from boarding at Valley Animal Hospital, Plaintiff Hartwell had the right to possess the five (5) or six (6) dogs and she did not consent to Defendant Schwab to take the five dogs to LAAS for impound.

148.   Plaintiff is informed and believes, and based thereon, alleges that Defendants Schwab and/or LAAS maintain possession of the five (5) or six (6) dogs and do not intend to return the dogs to Plaintiff Hartwell.

149.   Plaintiff Hartwell did not consent to Defendant Schwab's possession or dumping of the five (5) or six (6) dogs to Defendant LAAS.

150.   Plaintiff Hartwell did not consent to Defendant LAAS' possession or impoundment of the five dogs.

### Defendant McCurry Obtained Possession of Plaintiff Hartwell's Dogs by Deception and Dumped the Dogs at Defendant LAAS's East Valley Facility

151.   On or about June 29, 2014, Defendant McCurry appeared at Plaintiff Hartwell's residence claiming that she had received a grant for veterinary care for rescue dogs.  Defendant McCurry told Plaintiff that she would take eight (8) or nine (9) of Plaintiff Hartwell's rescue dogs to a veterinarian for exams and treatment.

152.   Plaintiff Hartwell consented to Defendant McCurry taking the eight (8) or nine (9) dogs for the sole purpose of taking them to a veterinarian.  Defendant McCurry left Plaintiff Hartwell's property with eight (8) or nine (9) dogs.

153.   Plaintiff Hartwell is informed and believes that instead of taking Plaintiff Hartwell's eight dogs to a veterinarian, Defendant McCurry took  the dogs  to an unknown location to stage photographs of the dogs to fabricate evidence for Defendants' "investigation".  Plaintiff Hartwell is informed and believes that Defendant McCurry then took most or all of those dogs to Defendant LAAS's East Valley facility where the dogs were impounded as "evidence" in an investigation against Plaintiff Hartwell.

154.   Plaintiff Hartwell is informed and believes that Defendant McCurry retained possession of one of the dogs, "Timmy", who had recently been diagnosed with spina bifida.

155.    Plaintiff Hartwell is informed and believes that on or about July 6, 2014 Defendant McCurry posted a video of "Timmy" in what appeared to be a veterinarian's office. In the video, Defendant McCurry claims that she had "Timmy" euthanized because he had contracted Parvo.

156.    At the time that Defendant McCurry removed the  eight (8) or nine (9) dogs from Plaintiff Hartwell's residence, Plaintiff Hartwell had the right to possess those dogs and did not give consent to Defendant McCurry to take the dogs to LAAS for impound, nor did she consent to McCurry killing "Timmy".

157.    Plaintiff is informed and believes, and based thereon, alleges that Defendants McCurry and LAAS have possession of at least seven dogs fraudulently taken by Defendant McCurry and have no intention of returning those dogs to Plaintiff.

158.    Plaintiff Hartwell did not give consent to Defendant McCurry for any purpose other than the transport the dogs for medical care at a private veterinary clinic nor did Plaintiff Hartwell give consent to the impoundment of any of the dogs by Defendant LAAS, or to the killing of "Timmy".

159.    Plaintiff Hartwell did not consent to Defendant LAAS's possession or impoundment of the seven (7) or eight (8) dogs taken to the LAAS East Valley Shelter by Defendant McCurry.

160.    Plaintiff Hartwell has suffered, in an amount to be proven at trial, as a direct result of the actions of Defendants Schwab, McCurry and LAAS in taking, keeping, impounding and preventing Hartwell from possessing the dogs taken from her property by Defendant McCurry and from the property of Valley Animal Hospital by Defendant Schwab on June 29, 2014.

### FOURTH CLAIM FOR RELIEF

### (Accounting Against All Defendants)

161.    Plaintiffs repeat, reallege and incorporate by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

162.    Plaintiff Hartwell is informed and believes, and based thereon, alleges that Defendants have transferred, or otherwise disposed of, dogs unlawfully taken from her property, and from the property of Valley Animal Hospital since their impound by Defendant LAAS.

163.    Plaintiff Hartwell hereby demands a detailed accounting of all dogs, papers and other personal property taken from her property and the property of Valley Animal Hospital on June 28, 2014, June 29, 2014 and July 1, 2014, or that was transported by, handled, impounded by, or in the possession of any Defendants.

164.    Plaintiff Carnegie is informed and believes, and based thereon, alleges that Defendants, and each of them, never disclosed or identified the actual costs of care for Carnegie's Pet Dogs and Pet Cats.  Defendants merely served a *Notice of LEIN* [sic] for the amount of $13,130.13.  The *Notice* was not timely served and did not contain a breakdown of charges by animal, per day, with cost of any medicine or medical treatment.  Defendants are the only individuals or entities with knowledge of the nature and extent of the charges for caring for Carnegie's Pet Cats and Pet Dogs.

165.    In any event, Plaintiff should not be liable for charges in any amount where the seizure and continued detention of her animals is unlawful in the first place and the relevant statutes do not contemplate extended detention of animals.

## FIFTH CLAIM FOR RELIEF

### (Injunctive Relief Against All Defendants)

### An Injunction Is Necessary To Prevent Further Deprivation to Plaintiffs of their Personal Pets

166.    Plaintiffs repeat, reallege and incorporate by reference all of the allegations in the preceding paragraphs as if fully set forth herein.

167.    Plaintiff Hartwell is informed and believes, and based thereon alleges, that Defendants are currently in possession of Hartwell's property, specifically her pet dogs and dogs belonging to her mother and others, as well as other personal property seized outside the scope of the Search Warrant.

168.    Plaintiff Carnegie is informed and believes, and based thereon, alleges that Defendants are currently in possession of Carnegie's property, specifically her Pet Cats and Pet Dogs and other personal property seized outside the scope of the Search Warrant.

169.    Unless Defendants and their agents and assigns are prevented and enjoined from further retaining, transferring, conveying or otherwise disposing of Plaintiff Hartwell's and Plaintiff Carnegie's pets and other personal property, Plaintiffs will suffer irreparable harm.

WHEREFORE, Plaintiffs request injunctive relief for the immediate and unconditional release of their personal property and pets to them (and others); compensatory damages in an amount to be determined, punitive damages in an amount to be determined, attorney's fees, plus the costs of this action and such other relief as to this Court seems just, proper, and equitable.

Dated: September 9, 2014

Respectfully Submitted,

By:    _Laura Portillo_

Laura Portillo
*Attorney for Plaintiffs Christianna Hartwell and Corey Carnegie*